May it please the Court, Steve Sadie for Petitioner Nora Serrato. The Boot Camp Sentence Reduction Program is based on a complex web of statutes, guidelines, and rules. The 4046 statute, by its own terms, established boot camp and authorized funding for each year. They said that the BOP may place a prisoner in boot camp and, if successfully completed the boot camp, shall reduce the period of time if that's what the BOP provides in its rules. In 1991, Congress and the Sentencing Commission promulgated a rule, a guideline, 5F1.7, to implement that as what they called a sentencing option in a policy statement. The guideline also provided for recommendation as a necessary step in order to go to the boot camp. You had to have a judicial recommendation. The sentencing statutes provide for sentencing recommendations, and 3621B, the statute that provides the BOP with the authority to place persons in facilities, requires consideration of, in subsection four, sentencing recommendations, and subsection five, guidelines, policy statements, such as 5F1.7. So in 1996, with notice and comment for the first time, the sentence reduction is put into effect by the Bureau of Prisons, and it provides for a very standardized norm of how you get six-month sentence reduction if you are in the same situation as Ms. Serrato with a 30-month sentence, and you're supposed to have voluntary surrender to the boot camp. So with that complex in place, the judge imposes a sentence with a recommendation for boot camp, with the full expectation that instead of serving 30 months of incarceration, it will be six months of actual prison, a period of community corrections, including an extended period of home confinement, and an actual sentence reduction. And the question here is, can the Bureau of Prisons, with no notice to anyone, with no steps of procedural regularity or consultation with the judicial conference or other folks, can simply retroactively and unilaterally terminate the program? And we can contend that the manner in which that program was terminated  The first, I think, looking for the shortest distance between two points, is just looking at the Sentencing Reform Act itself. How do you change a guideline? The way you change a guideline is set out in subsections O and P. But what if they just ran out of money, which is what they did, and decided that they didn't want to continue this program anymore because they had other places where they wanted to place their money? Isn't that an administrative decision that the Board of Prisons can follow? I contend that it's a shared decision, and I believe that that's exactly what Congress intends. It's a shared decision. It's not simply that the BOP can decide we're going to save money. Who's that to be shared with? The judicial conference. There has to be notice. There has to be input from the public, especially from the Department of Justice, from the federal defenders. You want the judges to have input as to how the administration spends its money? Yes, because the program exists as a sentencing option. Can we do that as far as judges' salaries also? I think that there should be some options, and I believe that there is testimony from the Chief Justice regularly on that subject, and there should be, because the other… But it's hortatory, not mandatory. And that's all I'm asking for here. All I wanted was a chance to explain why this does not save a dime to terminate this program. This was a great program, and the board, November 16th through the November… A week later, they're telling my client that it's disbanded. There was no consideration here about how it should occur, and there should have been input. There should have been examination. There is no study done on the federal boot camp program. What's the remedy now, Mr. Seide? The remedy is a grant of this—a reversal of the denial of behavioris corpus, remand to the district court for entry of declaratory and injunctive relief as we requested. The—I think the court… Join them from doing what? And join them—the operation under the Administrative Procedures Act, when there is an unlawful rule promulgated, you go back to the default mode that it was before the illegal action. For example, in the— But can we recreate a boot camp? Yes. Well, they did. They sent it to the state boot camp. That was a partial remedy for which we are grateful, but it was an incomplete remedy, and what we were asking for here was a declaratory relief. With declaratory relief, this court— and I think this court is the only place in the country where we are going to ever have a chance to undo what happened, and it should be undone. It was an arrogation of power by the executive branch disregarding the judicial role, disregarding the DOJ role, disregarding the role of the defendants in providing input about whether this program should be terminated. It's not too much to ask. What's the source of the judiciary role? We don't ordinarily have a role in an appropriation or spending decision. What gives us a role here? 994 O&P specifically refers to if there's going to be a change in the guidelines. If a party thinks that there should be a change, that money should be allocated somewhere else than the boot camp, for example— But there isn't a change in the guidelines. The guideline stays the same. The fact the program is extinguished because of budgetary constraints means that the guideline is not enforced until the administration funds the program. But that's not so unusual. I don't think that's what the BOP did. What they did is they ripped up the guideline into small pieces and threw it into the wind. They said, this program is over. It's terminated. It didn't say, well, we don't have enough money right now. We're going to try it again. And the 994 specifically refers to the judicial conference. Judges, district judges all over the country have experience with this program. They're not saying that it's— I don't think the Sentencing Commission has the power to decide that maybe the judiciary should have a voice in the executive branch spending decisions. 994 is Congress. I think Congress can. And this goes back to Mestreda. Well, 994 is about Congress, but the guideline that you're referring to, that's simply a result of the Sentencing Commission, isn't it? No. It is Congress saying that these parties, including the judicial conference and including the Bureau of Prisons, shall tell the Sentencing Commission when they think that there is a change needed in the way the policy statements are set out. And that change is implemented through the judicial conference having the ability to say, gee, all the district court judges got together and said, this is a terrible idea to terminate this. You may ignore that recommendation. That may be what happens, but there is a procedure to be followed. Same way under the APA, the Administrative Procedure Act. Notice and comment. Let the public put some sunshine on this question because this was a terrible decision. The statements that they made about studies, they were telling Judge Lake that they had done extensive consideration. It wasn't extensive consideration. It was a four-day work party where they were making lists on flip sheets about what they should cut off. There was no study. Should it matter to us as we listen to you and review that all of these people who you think should have input had no input in the creation of the program? I believe that the program was the result of hearings at which there was testimony. And ironically, the Bureau of Prisons was none too pleased with it. They were saying, we don't think this is a great idea. And Congress was saying, we're establishing it anyway. But Congress did not specifically fund boot camp. And I think they'd be foolish to do so. They can't micromanage how big the program is going to be. Have you ever heard of earmarks? Have you ever heard of earmarks for bridges? They sure micromanage those. I think we don't have any dispute that the Bureau of Prisons has wide range on how big, whether they're going to consolidate them in one place, move them around. And logic would suggest if the judiciary has a place at the table for a spending decision, why wouldn't they have a place at the table for a spending decision about how big the program is? If the courts say, we've got all these dependents who want to put into the program, and your program's not big enough. So tell you what, you're going to have to spend more money. I don't see where the distinction lies between saying that we can't make them spend more, and they can't spend zero based on their own decision. I think it goes to that footnote that we relied on that the district court called dicta from the Supreme Court. You can't render a statute a nullity, and that's what happened here. We now, you might as well not have a 4046, you might as well not have a 5F1.7. They're gone, and they're gone with a unilateral action that allowed for no type of input from anyone else, no notice and comment, no proper democracy procedure of having the people speak before an executive agency acts. And, of course, it also operates retroactively, and I'll rely on the briefing on that, since I'm short on time. I'll give you a minute for rebuttal. May it please the Court, Andrew Cheng, U.S. Attorney's Office in San Francisco, for the appliee. There are two reasons why this court should affirm the district court's decision. The first is there's a lack of standing. Even if this court were to somehow reinstate the ICC program, under the third prong of standing, it would not redress Ms. Serrato's alleged harm. And the reason why is she has already finished a state court boot camp. You're not going to make her go through a federal boot camp, and so what the petitioner's argument is that somehow the supervised release would be reduced in the amount of time. But that's not within the province of Judge Breyer. That's within the province of the sentencing judge. And so at the end of the day, there's no standing, and so we shouldn't even reach the merits. The second... We'll hear about what happens to her with regard to her sentence in a few minutes. I don't know that I understand why it is that she can't complain about what's happened to the program generally. The reason, Your Honor, is because even if it were you to reinstitute the federal boot camp, that would not provide a remedy for Ms. Serrato. It wouldn't do anything for her. And Judge Breyer himself could not do anything for her. He could not adjust her sentence in light of the federal boot camps being reinstated. Now, on the merits, we believe that the main point that Your Honor's questions have raised... He could free her from any supervised release parallel to what she would have got had there been a boot camp. Assuming... And that's what she's really after. Assuming that the time served would have been reduced by the difference in time... Right. ...in which she entered the program. But I don't think he has the ability to adjust the sentence and the sentences for what it is. She doesn't care about adjusting the sentence so long as she, the habeas corpus says, release the prisoner from any supervised release. So I don't think... You better get to your second point. Okay. The second point is the lump sum appropriation. Under settled precedent, lump sum appropriations have been within the province of the agency. The Bureau of Prisons here decided how to spend its money, decided in this case that there weren't funds available. And under 4046, which talks about May, under 3621B, which talks about the Bureau of Prisons has the discretion to make the decision about placement. And under the federal regulation, 52431B, which talks about the availability of Bureau resources. All three stand for the proposition that this is a discretionary program that's within the province of the Bureau of Prisons to decide how to operate. What about all that mandatory language that your colleague, Mr. Sadie, was talking about? I'm not sure exactly where he gets that from. 36121B says the Bureau of Prisons shall designate the place of prisoner's imprisonment. Puts that onus right on the BOP, not on this court, not on any other commission. The other mandatory language talks about what the sentencing commission should do if it chose to change things. But it doesn't talk about what the Bureau has done, and this court has been reluctant to move into the province of an area of expertise of the agency. And that area of expertise is what to do with Bureau resources. And the key point is the lump sum appropriation, $4 billion earmarked to the BOP, was not specified. It wasn't said, as in the drug treatment programs, a certain sum shall go to this individual program. And that's a key distinction in terms of the cases cited by the petitioner. Mr. Ching, as you hear his argument, don't you understand that there's another prong, lack of notice? Yes, Your Honor. Is there an obligation to notify? No, Your Honor. And the reason why is that the program was established by internal memorandum. It would be a much different situation if the program was created through a regulatory scheme. And if that regulatory scheme was then removed, there would be notice and comment. But because the program was established through internal Bureau prisons memoranda, it's a big difference. There is no notice requirement because it's a general statement of policy. But history suggests that the program was created with a big shove from Congress. I think the main thrust of Cullen's argument is that Congress creates this by statute. BOP does away with it by administrative termination, fee out, whatever, without notice, comment, anything else, makes the statute a nullity. What's your response? Our response is always it's been discretionary. It hasn't ever been, well, the judiciary says put the person in a boot camp and that person is automatically in. It's always been subject to the availability of Bureau resources. It's always been subject to the Bureau prisons making that final call, does this person merit being in a boot camp for whatever reasons. Their screening processes, it's never a rubber stamp. It's never, well, judiciary says put them there, they put them there. And so it's not a nullity because the statute hasn't changed. Unless there are further questions from the Court, we do ask you to affirm based on threshold argument and based on the fact that it is committed to the Bureau's discretion. Thank you. Thank you. Mr. Sadie, we'll give you a minute. Thank you. First, this is a unique statute. There's no precedent that's going to guide you here where you have human freedom at issue, where you have a judge recommendation as a condition for the application of a sentence reduction, and where it has been called by both Congress and the Sentencing Commission a sentencing option implicating judicial authority. The question about whether there should be mandatory, whether there's, that Judge Bea asked about the mandatory language of 3621B, every time we cite in our briefing false, there is the language that 3621B requires individualized consideration based on the five listed factors that include the recommendation of the judge and policy statements which include the boot camp. They are required to look at that as one of the individualized options in making a decision. So that is mandatory. I don't want to guide your argument, but don't you want to get to his point of discretionary, that it's discretionary with the Bureau of Corrections? I do, and there is wide discretion that we completely recognize in implementing the program. They've chosen a number of criteria. My client meets every criteria. They can make those types of decisions, but discretion requires individualized exercise. No, no, he's not talking about discretion about whether your client qualifies for the program. He's talking about discretion about whether the program should even exist. And that's the discretion that does not – that there is not a – you have to look, when you're at agency power, what did Congress say? Did Congress say, Bureau of Prisons, if you decide that this is a bad idea, just don't do it. That's nowhere in any kind of legislative history. The legislative history says the contrary, that it is supposed to be in existence, that it is a prerequisite to the exercise of individualized discretion, that it at least exists in some form. What do you say to his argument that it's a lump-sum funded program, and therefore, by its very nature, the Bureau of Prisons has discretion about where to spend its money? There is a limitation from the statutes about where a lump-sum appropriation – first of all, the cases that they cite, vigil, does not involve human freedom. It does not involve a statute that says established, and it doesn't involve a statute that says, here's – we authorize money for each successive year. But most importantly, the statute said you have this program, and then the program continued in a different form. But the same people were given the same service. Here, no one receives a sentence reduction. Before, this class of 4,000 people every year were participating in a program that was achieving a sentence reduction of six months, more human freedom. And instead, by administrative fiat, they made a decision that gave, with no consideration of judges, no considerations of the Department of Justice, no considerations of defendants and their representatives, that the program shall not exist. No one gets a sentence reduction that I believe was fully contemplated by Congress and was established not by a 1990 memo, but by 1996 notice in common. Thank you very much. Thank you. The case just argued is submitted, and now we turn to United States v. Serato.
judges: Farris, Clifton, Bea